J-A27020-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: M.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: H.B., MOTHER | : | |
| | : | |
| | : | No. 884 MDA 2024 |

Appeal from the Decree Entered May 23, 2024
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s):  009-ADOPT-2024

| | | |
|---|---|---|
| IN RE: ADOPTION OF: G.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: H.B., MOTHER | : | |
| | : | |
| | : | No. 885 MDA 2024 |

Appeal from the Decree Entered May 23, 2024
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s):  010-ADOPT-2024

BEFORE:  LAZARUS, P.J., KUNSELMAN, J., and McLAUGHLIN, J.

MEMORANDUM BY KUNSELMAN, J.:  **FILED: APRIL 17, 2025**

In this consolidated matter, after remand from this Court, H.B. (Mother) appeals the decrees issued by the Cumberland County Court of Common Pleas, which terminated her rights to her now nine-year-old daughter, M.B., and seven-year-old son, G.B., (collectively, the Children) pursuant to the Adoption Act.  ***See*** 23 Pa.C.S.A. § 2511(a), (b).  Additionally, Mother's counsel has filed an application to withdraw and a brief, pursuant to ***Anders v.***

*California*, 386 U.S. 738 (1967). After review, we affirm the termination decrees and grant counsel leave to withdraw.[1,2]

We incorporate, in part, the same facts from our previous memorandum in this case. *See In re Adoption of M.B.*, 2025 WL 472677 (Pa. Super. 2025). Before living in Cumberland County, the family had been involved with Franklin County Children and Youth Services since 2015. In April 2015, the Children's older siblings were removed from the home due to its condition.[3] There were also other issues including the older siblings' dental needs not being addressed, Mother's prescription drug addiction, and Father's untreated mental health concerns. In October 2015, M.B. had withdrawal symptoms from prenatal drug exposure. M.B. and her older siblings were ultimately returned to the parents' care. In May 2019, the Children and the older minor siblings were placed again due to instability. Father eventually regained physical and legal custody.

_____

[1] The court also involuntarily terminated the rights of P.B. (Father), who did not appeal.

[2] The appellee, Cumberland County Children and Youth Services (the Agency), submitted a letter in lieu of a brief and in support of Mother's counsel's application to withdraw and *Anders* brief. The Agency concurred with counsel that Mother's appeal was wholly frivolous and relied on the orphans' court's opinion. The Agency stated "[t]here is no basis in the applicable law or record to support this appeal."

[3] We glean from the record that the Children have five older siblings: three who are no longer minors, one who is in a different placement, and one who passed away in 2014. At the time of this case, none of the other siblings were in Mother's or Father's care.

At some point, the family relocated to Cumberland County, and the Agency received an intake in November 2020 for school attendance. The Children were adjudicated dependent in June 2022. Father retained legal and physical custody. Mother was incarcerated at the time of the adjudication.

In November 2022, Alternative Behavior Consultants (ABC) staff found Father stumbling and under the influence of alcohol and prescription drugs at the home. The Children were ultimately removed from Father's care and initially placed in separate foster homes, although M.B. later joined G.B. in his foster home in January 2023. Both Children have remained there ever since, and the foster home is pre-adoptive. At the time of removal, Mother was in a halfway house and could not care for the Children.

After removal, Mother's goals included: maintaining stable housing; complying with the Agency to visit the Children; addressing mental health, parenting, and drug and alcohol concerns; meeting the Children's various needs; and complying with her probation requirements. Mother failed to meet most of these goals.

Mother never had stable or appropriate housing to care for the Children. For the approximately one-and-a-half years from removal to the termination hearing, Mother was either incarcerated, living in a halfway house, living in shelters, or living with Father. Mother was incarcerated multiple times, including at some point prior to January 2021, at the time of the Children's dependency adjudication in June 2022, and from September 8 to November 2, 2023. As of the termination hearing, she was reportedly living in a motel

with her adult daughter and her daughter's boyfriend. Mother never had housing that the Agency deemed appropriate for reunification.

Mother did not meet her visitation goal; her visits with the Children were inconsistent. ABC closed Mother's visitation services in May 2023 because Mother did not show up for visits or did not respond to ABC. As a result, she did not have any visitation from May 2023 to January 2024. Mother was re-referred for visits again in January 2024. From January to May 2024, fourteen visits were offered. Mother attended seven visits. She missed four consecutive visits immediately before the termination hearing, and three visits were canceled on the Children's behalf.

The visitation coordinator testified that Mother was less engaging than Father was with the Children during visits. The Children were less calm, more reserved, and hesitant with Mother. Mother was also unable to set boundaries with them. There was an incident at a visit where Mother yelled in front of the Children because they did not hug her or say "I love you" when they were getting ready to leave. *See* N.T., 5/22/24, at 17. The Children reportedly experienced anxiety and stress around visits. Mother never progressed to unsupervised visitation.

Mother did not meet many of her other goals either. She did not attend therapy or mental health counseling outside of medication management. Despite multiple referrals, she did not engage in parenting services to address her parenting issues. Mother did not make progress with her parenting skills, nor did she demonstrate progress in learning how to care for the Children.

She was notified of all the Children's medical and dental appointments, but she did not attend any of them. The Agency also felt that Mother was very hard to contact. Mother did not provide care or support for the Children, nor did she have contact with them outside of visits. She never asked for updates on the Children between visits. Overall, Mother met only two goals: she complied with the conditions of her probation, and she was successfully discharged from drug and alcohol treatment.

Ultimately, the Agency petitioned to terminate Mother's and Father's parental rights, and the orphans' court held a termination hearing on May 22, 2024. The ABC visitation coordinator, the Agency caseworker, the Children's foster mother, and Father testified; the Children also testified in chambers. Although Mother had actual notice of the hearing, Mother did not attend. The Children indicated that they wanted to live with their foster parents and did not like going to visits with their biological parents. Both the Children's guardian *ad litem* and their legal counsel advocated for Mother's parental rights to be terminated.

The orphans' court terminated Mother's and Father's rights to the Children under the Adoption Act. **See** 23 Pa.C.S.A. § 2511(a), (b); **see also** N.T. at 105. Mother timely appealed.

Before we address the merits of Mother's appeal, we note that her counsel has filed a petition to withdraw and a brief pursuant to **Anders v.**

*California*, 386 U.S. 738 (1967) and *Commonwealth v. Santiago*, 978 A.2d

349 (Pa. 2009).[4] To withdraw pursuant to *Anders*, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

> With respect to the third requirement of *Anders*, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights."

*In re J.D.H.*, 171 A.3d 903, 907 (Pa. Super. 2017) (citations omitted).

Additionally, counsel must file a brief that meets the following

requirements established by the Pennsylvania Supreme Court in *Santiago*:

> (1) provide a summary of the procedural history and facts, with citations to the record;

> (2) refer to anything in the record that counsel believes arguably supports the appeal;

> (3) set forth counsel's conclusion that the appeal is frivolous; and

> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

---

[4] This Court extended the *Anders* principles to appeals involving the termination of parental rights. *In re X.J.*, 105 A.3d 1, 3 (Pa. Super. 2014) (citation omitted).

*In re Adoption of M.C.F.*, 230 A.3d 1217, 1219 (Pa. Super. 2020) (citation omitted).

Preliminarily, we find that counsel has substantially complied with the technical requirements to withdraw. *See Commonwealth v. Reid*, 117 A.3d 777, 781 (Pa. Super. 2015) (citation omitted) (observing that substantial compliance with the *Anders* requirements is sufficient).

In addition to verifying that counsel substantially complied with *Anders* and *Santiago*, this Court must "conduct a simple review of the record to ascertain if there appear on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated." *Commonwealth v. Dempster*, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*). Traditionally, we would start our review by giving "a most generous reading and review of 'the case' as presented in the entire record with consideration first of issues raised by counsel." *See id.* (citing *Anders*, 386 U.S. at 744).

The three issues counsel presented in the *Anders* brief that arguably support Mother's appeal are as follows:

> 1. Whether the Trial Court abused its discretion and committed an error of law when it found, despite a lack of clear and convincing evidence, that sufficient grounds existed for a termination of [Mother's] parental rights to [her] [C]hildren under Section 2511(a) of the Adoption Act, 23 Pa.C.S.A. §2511(a).
>
> 2. Whether the Trial Court abused its discretion and committed an error of law in terminating [Mother's] parental rights when the conditions which led to the removal or placement of the [C]hildren no longer existed or were substantially eliminated, thus contravening

sections 2511(a) and (b) of the Adoption Act, 23 Pa.C.S.A. §2511(a), (b).[5]

3. Whether the Trial Court abused its discretion and committed an error of law in determining it would be in the [C]hildren's best interest to have parental rights terminated, when [Mother] loves her [C]hildren, and if given sufficient time, would be ready, willing, and able to parent the [C]hildren and provide for their needs, thus contravening Section 2511(b) of the Adoption Act, 23 Pa.C.S.A §2511(b).

**Anders** Brief at 4-5.

We review these issues mindful of our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

**In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

---

[5] We note that this issue regarding the conditions that led to removal of the Children is covered solely under Section 2511(a) because subsection (b) focuses on the "developmental, physical and emotional needs and welfare of the child" and not the conditions that led to removal. **See** 23 Pa.C.S.A. § 2511(a), (b).

Our Supreme Court has repeatedly stated that in termination cases, deference to the trial court is particularly crucial. ***In re Adoption of L.A.K.***, 265 A.3d 580, 597 (Pa. 2021); ***see also Interest of S.K.L.R.***, 256 A.3d 1108, 1124 (Pa. 2021) ("When a trial court makes a 'close call' in a fact-intensive case involving . . . the termination of parental rights, the appellate court should review the record for an abuse of discretion and for whether evidence supports the trial court's conclusions; the appellate court should not search the record for contrary conclusions or substitute its judgment for that of the trial court."). The abuse-of-discretion standard in termination cases "is a highly deferential standard and, to the extent that the record supports the court's decision, we must affirm even though evidence exists that would also support a contrary determination." ***In re P.Z.***, 113 A.3d 840, 849 (Pa. Super. 2015) (citation omitted); ***see also T.S.M.***, 71 A.3d at 267.

Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***In re C.S.***, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quoting ***Matter of Adoption of Charles E.D.M., II***, 708 A.2d 88, 91 (Pa. 1998)).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants

termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child . . . .

*In re C.M.K.*, 203 A.3d 258, 261-62 (Pa. Super. 2019) (citation omitted); *see also Interest of M.E.*, 283 A.3d 820, 830 (Pa. Super. 2022).

In our prior memorandum, we explained that terminating Mother's rights under Section 2511(a)(5) and (a)(8) was inappropriate because the Children were not removed from Mother's care. *See M.B., supra*. On remand, the orphans' court supplemented its Appellate Rule 1925(a) opinion to explain that it also found termination warranted under Section 2511(a)(1) and (a)(2).

Mother's first and second issues involve the termination analysis under Section 2511(a), so we address those issues together. As we may affirm under any ground under Section 2511(a), we review the court's decision as to Section 2511(a)(2). That subsection provides:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> [. . .]
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

To satisfy Section 2511(a)(2), the petitioning party must establish: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of A.H.*, 247 A.3d 439, 443 (Pa. Super. 2021) (citation omitted). Moreover, grounds for termination under Section 2511(a)(2) "are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied." *Id.* (citation omitted). On this point, we emphasize that "[p]arents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." *Id*. (citation omitted).

Here, the orphans' court determined that the Agency had proven the statutory grounds for termination under Section 2511(a)(2). The court noted:

> The Agency proved that [Mother's] incapacity has caused the [C]hildren to be without essential parental care and that the conditions and causes thereof will not be remedied by [Mother]. At the risk of repeating every relevant fact set forth in the previous section, we reiterate that [Mother] did not and had not had housing remotely suitable for reunification over the two years between adjudication and the termination hearing. Despite the Agency's efforts to connect [Mother] with housing resources, [Mother] was living in a motel room with her daughter and others at the time of the hearing, which followed [Mother] living in a shelter, neither of which would accommodate the [C]hildren. The evidence established that the Agency had serious difficulty getting in touch with [Mother] regularly and that [Mother] was not engaged in mental health counseling, nor was [Mother] ever able to receive any parenting skills services or move to unsupervised visits as a

- 11 -

result of the lack of satisfaction of her reunification goals or demonstration of independent caretaking abilities.

The [C]hildren had been in placement for a year and a half at the time of the termination hearing. For a year prior to the termination hearing, we had documented [Mother's] compliance with the permanency plan as either minimal or none. [Mother] had yet to demonstrate any capability to cooperate with the Agency's efforts to reunify or otherwise exhibit the ability to parent the [C]hildren, care for the [C]hildren or provide for the control or subsistence necessary for their physical or mental well-being. [Mother] did not, in a minimal showing of effort, appear at the termination hearing. A year and a half after the [C]hildren were placed, [Mother's] only strides were completion of drug and alcohol treatment, compliance with her probation, and (inconsistently) visiting with the [C]hildren, though, as discussed, [Mother] had yet to demonstrate ability to care for the well-being of the [C]hildren during such visits, and certainly no efforts were made to care for the [C]hildren outside of the visits. *[Mother] missed four consecutive visits with the [C]hildren immediately prior to the termination hearing*. We found that the causes of [Mother's] incapacity cannot or will not be remedied by [Mother].

Orphans' Court Opinion (O.C.O.), 2/27/25, at 5-6 (emphasis in original) (footnotes omitted).

On remand, we provided Mother's counsel the opportunity to file a new **Anders** or advocate's brief. Mother's counsel declined to do so.[6] Thus, we analyze the arguments made in counsel's original **Anders** brief. Although the

---

[6] Mother's counsel stated, "I believe the analysis and arguments in my original **Anders** brief are applicable to the [orphans' court's] findings in the Supplemental Opinion. The findings of the [orphans' court] support termination of parental rights under Section 2511(1), (2) and (b), making the appeals meritless. As such, I renew my request for allowance to withdraw as counsel for [Mother] in these cases." **See** Response to Order, 3/10/25.

- 12 -

arguments in that brief were made under (a)(8), we apply them, to the extent possible, to (a)(2).  Mother asserts that "the conditions which led to removal and placement either have been, or could be[,] remedied, in a reasonable period of time."  **Anders** Brief at 12.  Mother argues that she had met or was meeting some of her permanency plan goals, including completing a drug and alcohol evaluation and treatment and complying with the terms and conditions of her probation.  **See id.**  Mother was incarcerated and in inpatient treatment for some of the case, which she argues limited her ability to work on her goals.  **See id.** at 12-13.

Mother's argument fails to appreciate the standard of review we must apply to termination cases.  We must accept the orphans' court's factual findings and credibility determinations if they are supported by the record.  **See T.S.M.**, 71 A.3d at 267 (citation omitted).

Our review of the record supports the orphans' court's decision.  As noted, in the approximately one-and-a-half years between the Children's removal and the termination hearing, Mother failed to meet most of her goals.  She inconsistently visited the Children and never progressed to unsupervised visits, did not have appropriate housing, did not communicate consistently with the Agency, did not engage in parenting services or make progress with her parenting skills, and did not attend therapy or mental health counseling outside of medication management.  **See** N.T. at 8-9, 39-43, 51-54, 57-58.  Although Mother was incarcerated or in treatment for some of the time, that

does not account for her nearly complete lack of progress on most of her goals or her failure to maintain regular contact with the Agency.

Therefore, there was clear and convincing evidence to support the orphans' court's decision to terminate Mother's parental rights under Section 2511(a)(2). The evidence showed that Mother was either unable or unwilling to remedy the causes of her incapacity, abuse, neglect, or refusal. Because the court's findings are supported by the record, we must accept them. **See T.S.M., supra**. Mother's first and second issues merit no relief.

We turn next to Mother's third issue, which challenges the termination under Section 2511(b), the second part of the bifurcated analysis. Section 2511(b) provides:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S.A. § 2511(b).

The "determination of the child's particular developmental, physical, and emotional needs and welfare must be made on a case-by-case basis," but "courts should consider the matter from the child's perspective, placing [the child's] developmental, physical, and emotional needs and welfare above concerns for the parent." **In the Interest of K.T.**, 296 A.3d 1085, 1105 (Pa. 2023) (citations omitted); **see also C.M.K.**, 203 A.3d at 261-62 (the focus of

- 14 -

Section 2511(a) is the conduct of the parent, whereas the focus of Section 2511(b) is the best interests of the child).

"The plain language of Section 2511(b) clearly mandates that, in assessing the petition to terminate parental rights, the 'primary consideration' must be the child's 'developmental, physical and emotional needs and welfare.'" ***K.T.***, 296 A.3d at 1105. It is well-established that the child's "emotional needs" and "welfare" include "intangibles such as love, comfort, security, and stability." ***Id.*** at 1106 (citing ***T.S.M.***, 71 A.3d at 267). Our Supreme Court also requires courts to consider, not only whether the children have a bond with their biological parent, but also whether the children are in a pre-adoptive foster home and whether they have a bond with their foster parents. ***Id.*** (citing ***T.S.M.***, 71 A.3d at 268; ***In re D.C.D.***, 105 A.3d 662, 677 (Pa. 2014)).

Here, the orphans' court concluded that the Agency had met its burden. On remand, the court thoroughly explained its reasoning, in part, as follows:

> The [C]hildren were eight and six years old at the time of the termination hearing. The guardian [*ad litem* (GAL)], the CASA, and the [Agency] caseworker voiced the same sentiment, that the [C]hildren have developmentally and emotionally flourished since placement with their current foster family . . . .
>
> Counsel for the [C]hildren represented that the [C]hildren understood the nature of termination proceedings and that they wished to remain in their foster home and to be part of that family permanently. The [C]hildren, according to their counsel, feel loved and safe in their foster home . . . and counsel noted that the foster family accommodates the [C]hildren seeing their other

siblings which the [C]hildren enjoy. Such visits occur about twice a month. This [c]ourt met with the [C]hildren in chambers, where six-year-old G.B. expressed that he is happy living with his foster parents and that he wants to remain living with his foster parents. He said he was "[a] little bit sad" about going to visits with his biological parents, and that he doesn't want to go to the visits because [Mother] "pulls [his] legs sometimes" and "twist[s his] feet," which "hurts." G.B. also said that he does not want to live with his biological parents "[b]ecause they are a little bit mean." Eight-year-old M.B. testified that she feels "[b]ad" about visits with her parents because [Mother] had previously "grabbed" her and bruised her under her arm. She said she does not feel safe with her biological parents and fears "they might smack [her] again," but her foster parents "always keep [her] safe." The [Agency] caseworker related that the [C]hildren were worried about seeing their parents at the termination hearing and feared that their parents would be "mad" if their rights were terminated.

Testimony from the [C]hildren's foster mother supported the aforementioned evidence. . . . The foster mother related that in addition to the [C]hildren generally expressing that they do not wish to go to visits, the [C]hildren ask "who is going to take care of us" when they learn that one of their older siblings will not be attending the visit.

The [C]hildren are in a pre-adoptive home with foster parents with whom they are clearly bonded. The evidence established that the [C]hildren feel safe, loved, and secure there, and that the inverse is true of the [C]hildren's feelings about being with their biological parents. It was our view, based on the testimony from those closest to the [C]hildren and the [C]hildren themselves that the [C]hildren are not strongly bonded to [Mother], if at all. Any such bond the [C]hildren have with [Mother] is permeated with fear and dread and falls far short of a necessary and beneficial bond. . . . [Mother] has yet to conduct herself in a way that allows the [C]hildren to feel secure or in any way that resembles a parent acting for the benefit of her children, including merely asking how they are doing or seeking updates on their progression in the services they're receiving. We review this history to support our lack of surprise that the [C]hildren are not bonded to [Mother] nor do they feel safe

- 16 -

with or cared for by her. The [C]hildren's concern about who will take care of them at visits if their older sibling isn't there is also as unsurprising as it is tragic, as [Mother] had yet to demonstrate capability or, frankly, apparent desire to care for the [C]hildren or provide for their needs and welfare.

. . .Any detrimental impact that may result from termination of parental rights is outweighed by the benefits of allowing the [C]hildren to find permanency with this loving foster family that has already been caring for the [C]hildren as if they were their own and where their emotional, developmental, and physical needs are being met, including the [C]hildren's particular therapeutic and physical needs for which they're receiving services. We found that termination of [Mother's] parental rights was in the [C]hildren's best interests, giving primary consideration to their developmental, physical and emotional needs and welfare.

T.C.O. at 7-11 (footnotes omitted).

On appeal, Mother argues that "terminating her parental rights was not in the [C]hildren's best interest as, despite her struggles and time away from them, she loves her [C]hildren and wants to prove to everyone that she can provide the care they need." *Anders* Brief at 13. Mother asserts that the "[C]hildren need her in their life, and she wants to be there for them." *Id.* Mother claims that the orphans' court failed to "consider the bond that the [C]hildren have with [Mother] and the effect that terminating Mother's rights would have on them, and that bond." *Id.* at 14.

The first part of Mother's argument fails because it focuses on Mother, not on the Children's needs and welfare. It is well established that Section 2511(b) is focused on the needs and welfare of the children. *See C.M.K.*, 203 A.3d at 261-62 (citation omitted). Mother's assertions, that she loves the

- 17 -

Children, "wants to prove to everyone that she can provide the care they need[,]" and "wants to be there for them[,]" focus on Mother's wants and feelings, not on the Children's needs and welfare.

The rest of Mother's argument again fails to appreciate our standard of review. We must accept the orphans' court's factual findings and credibility determinations if they are supported by the record. *See T.S.M.*, 71 A.3d at 267 (citation omitted).

Here, the record supports the orphans' court's findings. As noted, the Children indicated that they wanted to remain with their pre-adoptive foster family and did not like visiting with Mother. *See* N.T. at 44-45, 67, 76-78, 83-86, 102-03. Their guardian *ad litem* and the Agency caseworker stated that termination would be in their best interest. *See id.* at 45-46, 103-04. The Agency caseworker also testified that termination would have a positive, not a negative or detrimental, impact on them. *See id.* at 45-46. Further, the court's opinion belies Mother's assertion that the court failed to consider the bond between the Children and Mother. Instead, as illustrated above, the court thoroughly considered that potential bond. The court believed, and the record supports, that the Children are bonded with their foster family and have little, if any, bond with Mother. Mother's third issue merits no relief.

Finally, after conducting our independent review, we discern no additional, non-frivolous issues overlooked by counsel. *See Dempster*, 187 A.3d at 272.

In sum, we agree with counsel's assessment that Mother's issues on appeal are frivolous, and we discern no error of law or abuse of discretion in the orphans' court's decision to terminate Mother's parental rights under Section 2511(a)(2) and (b) of the Adoption Act.

Decrees affirmed. Petition to withdraw granted. Jurisdiction relinquished.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/17/2025